# EXHIBIT 1

## STATE COURT DOCUMENTS

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE No. 2025-CP- |
| | ) | |
| Landmarks for Families, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **SUMMONS** |
| | ) | **(JURY TRIAL DEMANDED)** |
| vs. | ) | |
| | ) | |
| Brown and Brown Insurance Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | +` |

**TO THE ABOVE-NAMED DEFENDANT:**

YOU ARE HEREBY SUMMONED and required to answer Plaintiff's Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to this Complaint upon the subscriber, Berly Rouse LLC at 311 Johnnie Dodds Boulevard, Suite 171, Mount Pleasant, South Carolina 29464, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, or fail to otherwise appear and defend, the Plaintiff will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

Respectfully submitted,

*/s/ Joel A. Berly IV*
Joel A. Berly IV, Esq. (SC Bar No. 103517)
**BERLY ROUSE LLC**
311 Jonnie Dodds Blvd., Ste 171
Mt. Pleasant, SC. 29464
T: (843) 969-2887
E: jab@berlyrouse.com
***Attorneys for Plaintiff***

August 12, 2025
Charleston, South Carolina

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON<br><br>Landmarks for Families, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Brown and Brown Insurance Services, Inc.,<br><br>Defendant. | IN THE COURT OF COMMON PLEAS<br>NINTH JUDICIAL CIRCUIT<br>CASE No. 2025-CP-<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

COMES NOW the Plaintiff, Landmarks for Families ("Plaintiff" or "Landmarks") complaining of Defendant Brown and Brown Insurance Services, Inc. ("Defendant" or "Brown and Brown") and for its causes of action states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a 501(c)(3) non-profit corporation duly organized and operating under the laws of the State of South Carolina, with its principal place of business in Charleston County, South Carolina.

2. Defendant is an insurance company organized under the laws of the state of Florida, doing business and operating within the State of South Carolina.

3. The relationship, contracts, and agreements made between the parties which are the foundation of a substantial part of the acts or omissions giving rise to this complaint were all formed and executed in the State of South Carolina.

4. The Court has personal jurisdiction over Defendant pursuant to S.C. Code § 36-2-802 (2024), in that the Defendant has and continues to do business within the State of South Carolina.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

5. Venue is proper in this Court pursuant to S.C. Code § 15-7-70, in that the loss giving rise to the instant complaint occurred in substantial part within Charleston County, and the Defendant is an insurance company doing business in Charleston County within the State of South Carolina.

6. Subject Matter jurisdiction is proper with the Court as the amount in controversy in this civil action exceeds $7,500 pursuant to S.C. Code Ann. § 22-3-10, and because the court is situated in the county in which a substantial part of the acts and omissions, facts, and circumstances giving rise to this claim occurred, pursuant to S.C. Code Ann. § 15-7-30.

**FACTS**

*History and Negligent Practices*

7. Beginning in or around October 2012, Plaintiff Landmarks contracted with Defendant Brown and Brown for insurance coverage.

8. From the outset of the relationship, Landmarks made Brown and Brown aware of its requirements for certain coverage, as dictated by contract and state law, including, *inter alia*:

a. At least $2,000,000 for General Aggregate and Products/Completed Operations Aggregate coverage;

b. At least $1,000,000 coverage for Commercial General Liability, Sexual Abuse, Automotive, Cyber Liability, and Worker's Compensation, per occurrence;

c. All coverage being occurrence-based pursuant to statutory requirements in South Carolina;

d. And any other such requirements as were disclosed and discussed between the parties in the procurement of insurance coverage.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

9. Subsequent years of coverage procured or otherwise brokered by/through Brown & Brown between the start of this fiduciary relationship, and sometime in or around September 2023, were compliant with these requirements.

10. This pattern of business dealings, in additional to contractual documentation within the possession of Brown & Brown setting forth the requirements for the policies which Brown & Brown as to procure, evidence in part the basic understanding between these parties for the entirety of the contracting period.

11. The Landmarks account, however, was inappropriately and/or recklessly handled by Brown & Brown. Specifically, upon information and belief, by a newly assigned account manager at the company, an inexperienced junior associate identified as Ms. Kristen Stone.

12. Ms. Stone and/or additional agents, employees, and or representatives of Brown & Brown handled the Landmarks account in an inattentive and unprepared manner, and decisions, acts, and/or omissions made by and/or through these individuals impacted Landmarks resulted in serious, substantial, and detrimental damages suffered by Plaintiff.

13. Notably, on September 8, 2023, Ms. Stone initiated the renewal process for the Landmarks' insurance policies and failed to schedule or conduct any pre-renewal strategy meeting, a standard practice between the parties to that point which was necessary in determining coverage gaps and other issues or changes that needed to be resolved in the renewal process.

14. Landmarks then received communication from Ms. Stone on or about November 15, 2023, which stated that coverage renewals were being denied due to, as she put it, "carrier appetites". This conversation occurred about six (6) days before Plaintiff's coverage was set to lapse.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

15. Following this communication, Ms. Stone secured a sixty (60) day renewal of the previous coverage to prevent the immediate and impending lapse on November 21, 2023, and that renewal was set to expire on or about January 20, 2023.

16. This temporary solution was a surprise to Landmarks, who knew that coverage was necessary for its ability to operate and conduct its business, and at this point, the temporary solution failed to address the already significant failures of the broker.

17. These failures did not stop in November, however. Specifically, as the temporary renewal date approached, Ms. Stone informed Landmarks on January 2, 2024, that information and invoices would be delivered to Landmarks in the coming days

18. However, either due to a reckless indifference to Plaintiff's needs, or an inability to manage the tasks associated with proper handling of accounts, Ms. Stones' delivery of renewal information and invoices did not occur until January 19, 2024, one day before the lapse date.

19. Faced with the possibility of losing coverage, which would immediately place them in violation of statutory requirements, Landmarks could only accept the proposals submitted, or allow their policy to lapse.

20. The proposed policies delivered by Defendant on January 19, 2024, included, among other things, an approximate $90,000 increase in premium payments in comparison to the prior year, as well as undisclosed (and at the time undiscovered) reductions in critical and necessary coverage areas, including reductions in coverage so large that they violated state requirements for Landmarks' category of organization.

21. Landmarks could not accept these changes, as they were financially and legally untenable, forcing Landmarks to allow its coverage to lapse on. January 20, 2024.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

22. Defendants sent further proposed policies on January 25, 2024, which would later be discovered to be valueless, as the revised plans increased premiums by an even greater amount, now over $135,000 total, and furthermore failed to disclose decreased coverage of sexual abuse claims from $1,000,000 to $100,000, a provision which is in direct violation of state law for Landmarks' category of organization, as well as a change which Landmarks would not discover until several months thereafter.

23. Landmarks, now five days without any insurance coverage, had no choice but to immediately accept these policies, doing so with the trust and understanding, as represented through the course of dealing between the two parties throughout the past decade, that the coverage would be in compliance with Landmarks legal and contractual requirements.

24. Plaintiff sought clarification on what the policy terms were numerous times over the coming days, weeks, and months, to ensure compliance with contractual and legal requirements, but was not properly informed by Defendant. In the months that followed the initial acceptance of the new policy proposed by Defendant, Landmarks repeatedly attempted to receive clarification of the terms, but Defendant either evaded or directly concealed and misrepresented important details. To be clear, at no point through the date of this filing has Landmarks received any responsive communication which contained accurate or otherwise substantively responsive information.

25. Furthermore, notwithstanding the numerous repeated requests from Landmarks for information on the coverage which Brown & Brown had procured, on April 22, 2024, Plaintiff discovered that Defendant had, without consultation, notice, or disclosure of any kind, changed the sexual abuse coverage limit to increase it in accordance with the Landmarks' requirements, but

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

switched the type of coverage from occurrence-based to claims-made. This appears to be yet another effort for Brown & Brown to try to cover its past mistakes.

26. On information and belief, Defendant concealed this change in order to hide its previous mistakes, believing Landmarks would not catch the change so long as they were not notified.

27. The switch from occurrence-based to claims-made coverage for sexual abuse was not only done without notice and in disregard of the duties owed to Landmarks as a client of Defendant's, but it also directly harmed Plaintiff, as claims-made style policies for sexual abuse coverage for Plaintiff's organization category are not permitted under state law.

28. Upon direct request on June 7, 2024 and after Landmarks requested to change the policy to ensure compliance with legal and contractual obligations, Defendant updated the policy.

29. On June 19, 2024, Defendant switched the sexual abuse coverage to the required total coverage, but still, despite direct communication and delivery of specific legal and contractual language evidencing Landmarks' needs, Defendant failed to update the coverage to the mandatory occurrence-based coverage instead of the claims-made coverage.

30. Further communication during this time about other parts of coverage, such as gap coverage and tail insurance, was not (nor has it been) sufficiently addressed by Defendant, leaving Plaintiff uncertain and presumably inadequately covered months into the aforementioned policy coverage period.

31. Landmarks' COO communicated to Defendant on or about July 19, 2024, that Plaintiff had secured alternative coverage, and requested that the previous policies procured or otherwise brokered through Brown & Brown to be canceled retroactively as of June 15, 2024, with the exception of one policy – specifically, Landmark's earthquake policy

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

32. Brown & Brown agreed to provide the previous policies and confirm coverage for all types and dates, from the respective carrier that provided coverage, for calendar years 2023 through the present.

33. The subsequent communications from Brown & Brown were inconsistent and did not provide Plaintiff with confirmation of the precise coverages listed or the corresponding insurance carrier that provided the coverage.

34. Furthermore, weeks later, on August 20, 2024, Landmarks received a cancellation notice from First Insurance, within which it was noted that the policy cancelation had included the earthquake policy.

35. Upon information and belief, the cancellation by First Insurance of all of the underlying policies, including the earthquake policy, was due to Ms. Stone's prior instruction to stop all payments, but because the instructions were given before ensuring the policy transition and cancellation was properly finalized, the policy was likely bundled and canceled by First Insurance.

36. Because of this improper handling of the transition and cancelation of the policy with Defendant, Plaintiff was forced to make two separate emergency payments to First Insurance in order to keep coverage: one on August 21, 2024, for an amount of $20,400; and another on September 4, 2024, for a total of $18,545.

37. Finally, after repeated attempts to prompt Defendant to rectify the problem, Ms. Stone labelled the account "paid in full", with no additional payments required, on September 27, 2024.

38. Still, the details of the coverage that Landmarks has, whether it has been properly closed, or whether the policy still has earthquake coverage, remains unresolved.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

*Financial Impact to Plaintiff*

39. Due to the mismanagement of Plaintiff's account by Defendant, premiums increased substantially in the 2023-2024 calendar year.

40. Specifically, records indicate that for the year 2022-2023, the coverage Plaintiff paid for totaled about $13,384.00 per month on average, and in 2024-2025, the average coverage was comparable at about $19,014.00 with another broker.

41. These figures are much smaller however, than the 2023-2024 calendar year premiums, which stood at an average of $24,737.00 per month, an $11,353.00 increase from the year before, which is an astounding 84.8% increase from the previous year.

42. This dramatic and unjustified hike in premiums, which was still inadequate coverage despite the massive spike, is the result of Defendant's mismanagement of the account alone.

43. This extreme mismanagement caused Plaintiff to switch brokers to find other coverage, and it is further evidenced by the fact that Plaintiff received appropriate coverage elsewhere which has resulted in savings of at least $45,784 to date.

44. Because Defendant caused Plaintiff, a 501(c)(3) orphanage, to overpay for coverage and to have to seek coverage elsewhere while being under threat of underinsurance, it has been harmed significantly and seeks recourse at trial for its injuries.

*Inadequate Reimbursement*

45. Following the August 20, 2024, First Insurance cancellation, on September 5, 2024, First Insurance issued a reimbursement for unearned premiums in the amount of $79,051.94 to Defendant, who to date has only remitted $59,579.47 to Plaintiff, with no explanation for the $19,472.47 withheld.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

46. Upon information and belief, the lack of accounting or explanation for withholding these funds has been done in an attempt to improperly retain money duly owed to Plaintiff and has no basis at law or in equity.

47. Additionally, the pro-rata premium amount is $796.90, and as Coverage began January 20, 2024, but ended June 15, 2024, only 147 days of charges should be paid by Plaintiff.

48. Plaintiff has paid a total of $218,852.25 for coverage in 2024, but only should have paid $117,144.28 (796.90 x 147).

49. This difference is a total refundable amount of $101,707.97, but Plaintiff has only been refunded $62,187.43 to date. This leaves an outstanding balance owed to Plaintiff of $39,520.54 at a minimum.

50. Despite frequent communication about these outstanding balances due and owing, Defendant has not remitted payment in these amounts to Plaintiff, and as of the last request for these funds on April 25, 2025, Plaintiff has not received payment nor confirmation of the amounts due.

51. For the foregoing reasons, Plaintiff has been harmed and has suffered financial and other injuries which must be redressed by Defendant, due to Defendant's improper management of Plaintiff's account, coverage policies, lapses in polices, costs for changing coverage, overpaid premiums, and other refundable finances.

**FOR A FIRST CAUSE OF ACTION**
**(Fraud)**

52. Plaintiff realleges each and every preceding paragraph as if restated in its entirety herein.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

53. Defendant knowingly made false or misleading representations of material fact in the handling and oversight of Plaintiff's account, which Plaintiff justifiably relied on to its detriment.

54. Specifically, Defendant made the following false or misleading representations:

a. Defendant made false representations about the adequacy of coverage for Plaintiff's particular requirements, specifically the $1,000,000 sexual abuse occurrence-based coverage, which was known by both parties to be a necessity, but which was only covered for $100,000 on a claims-made basis and still represented by Defendant to have been adequate for Plaintiff's needs, so that Plaintiff would purchase the policy;

b. Defendant made false representations about the finalization of transfer and cancellation of the policy after the Plaintiff canceled on July 19, 2024. Plaintiff was led to believe, as a result of these false statements, that the policy would be properly canceled, except the earthquake coverage, and that discontinuing payments would not cause any problems in coverage. This was not true however, as transfer and cancellation had not been properly finalized, resulting in notice of cancellation by First Insurance on August 20, 2024, and emergency payments on August 21, 2024, and September 4, 2024;

c. Defendant made false statements to Plaintiff about the return of its premiums and the amount which would be remitted in payment to Plaintiff following the cancelation of the policy by First Insurance;

d. And any other such false statements which Plaintiff detrimentally relied on as will be proven at trial.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

55. As a result of these and other fraudulent statements, Plaintiff has suffered harm and financial injuries for which it seeks Defendant's compensation in an amount to be proven at trial.

56. Plaintiff additionally seeks punitive damages to recover the serious injuries suffered by it, and to ensure Defendant's willfully fraudulent actions are not repeated.

**FOR A SECOND CAUSE OF ACTION**
**(Negligent Misrepresentation)**

57. Plaintiff realleges each and every preceding paragraph in their entirety as if restated verbatim herein.

58. Defendant negligently misrepresented material facts to Plaintiff surrounding the adequacy of the policies in satisfying Plaintiff's insurance requirements.

59. These false representations made by Defendant include:

a. False statements about the adequacy of the coverage for Plaintiff's particular requirements, specifically the $1,000,000 sexual abuse occurrence-based coverage, which was known by both parties to be a necessity, but which was only covered for $100,000 on a claims-made basis and still represented by Defendant to have been adequate for Plaintiff's needs, so that Plaintiff would purchase the policy;

b. Defendant made misrepresentations about the finalization of transfer and cancellation of the policy after the Plaintiff canceled on July 19, 2024. Plaintiff was led to believe, as a result of these false statements, that the policy would be properly canceled, except the earthquake coverage, and that discontinuing payments would not cause any problems in coverage. This was not true however, as transfer and cancellation had not been properly finalized, resulting in notice of cancellation by First Insurance on August 20, 2024, and emergency payments on August 21, 2024, and September 4, 2024;

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

c. And any other such false misrepresentations that will be proven at trial.

60. Plaintiff has been harmed as a result of these misrepresentations and seeks compensation by Defendant in an amount to be proven at trial.

**FOR A THIRD CAUSE OF ACTION**
**(Breach of Contract)**

61. Plaintiff realleges each and every preceding paragraph in their entirety as if restated verbatim herein.

62. Plaintiff and Defendant concluded a valid, binding, and enforceable contract for the procurement of insurance coverage for Plaintiff.

63. Defendant breached that contract by repeatedly failing to procure adequate coverage at the required dates and times specified in the contract.

64. Even when coverage was produced after delays in procurement, it failed to meet the basic agreed upon requirements the parties contracted for.

65. Defendant breached these contractual obligations by:

a. Failing to procure adequate coverage by the November 21, 2023, lapse date;

b. Failing to provide the required documentation for policy and coverage proposals for Plaintiff's review in advance of the second lapse date on January 20, 2024;

c. Providing drastically overpriced and unnecessarily cumbersome coverage suggestions which deviated substantially from previous years, and were unreasonably out of proportion relative to Plaintiff's expectations;

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

d. Providing coverage which failed to meet the limit requirements that Plaintiff communicated to Defendant on numerous occasions, which Defendant could not have been unaware of;

e. Providing coverage which was not the type of coverage that Plaintiff communicated to Defendant as a requirement on numerous occasions, which Defendant could not have been unaware of;

f. Failing to apprise Plaintiff of the details of the policy coverage despite numerous attempts to communicate with Defendant;

g. And any other such ways as will be proven at trial.

66. For the foregoing reasons, Plaintiff has been harmed by Defendant's breach of its contractual obligation to procure adequate coverage and seeks compensation in an amount to be proven at trial.

**FOR A FOURHT CAUSE OF ACTION**
**(Bad Faith Failure to Procure insurance)**

67. Plaintiff realleges each and every preceding paragraph in their entirety as if restated verbatim herein.

68. Plaintiff contracted with Defendant to procure insurance coverage and in so doing established a principal agent relationship.

69. As Plaintiff's agent, Defendant owed a duty of good faith in the procurement of insurance to provide satisfactory services, find coverage which is not materially deficient, or void, and to find coverage which has terms the parties agreed would be supplied.

70. Defendant breached this duty when it:

a. Failed to find coverage which was not materially deficient;

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

b. Failed to find coverage which was compliant with the parties' understanding of basic requirements;

c. Negligently provided coverage which was drastically overpriced and inadequate;

d. Failed to follow the instructions of Plaintiff about the type of coverage or the policy limits required;

e. Failed to procure insurance by the agreed upon dates;

f. Failed to provide adequate notice of suggested policies before coverage lapse dates;

g. Failed to disclose material and important provisions in the policies supplied;

h. And in any other such ways as will be proven at trial.

71. For Defendant's failure to act in accordance with these requirements, Plaintiff has suffered harm and seeks compensation from Defendant for its bad faith failure to procure insurance.

**FOR A FIFTH CAUSE OF ACTION**
**(Negligence)**

72. Plaintiff realleges each and every preceding paragraph in their entirety as if restated verbatim herein.

73. Defendant owed a duty of care to Plaintiff to act as a reasonably prudent party would have under the same or similar circumstances.

74. Defendant failed to act reasonably under these circumstances, when it:

a. Failed to find coverage which was not materially deficient;

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

b. Failed to find coverage which was compliant with the parties' understanding of basic requirements;

c. Negligently provided coverage which was drastically overpriced and inadequate;

d. Failed to follow the instructions of Plaintiff about the type of coverage or the policy limits required;

e. Failed to procure insurance by the agreed upon dates;

f. Failed to provide adequate notice of suggested policies before coverage lapse dates;

g. Failed to disclose material and important provisions in the policies supplied;

h. And in any other such ways as will be proven at trial.

75. These breaches of the duty to have acted reasonably by Defendant proximately caused Plaintiff financial injuries for which it is entitled to compensation in an amount to be proven at trial.

**FOR A SIXTH CAUSE OF ACTION**
**(Violation of the South Carolina Unfair Trade Practices Act §§ 39-5-10, *et seq.*)**

76. Plaintiff realleges each and every preceding paragraph in their entirety as if restated verbatim herein.

77. Defendant engaged in an unfair and deceptive act in the stream of commerce by misrepresenting and/or failing to procure and place the proper insurance coverages specified and required by Plaintiff.

ELECTRONICALLY FILED - 2025 Aug 12 9:30 AM - CHARLESTON - COMMON PLEAS - CASE#2025CP1004503

78. Defendant's unfair and deceptive acts affected the public interest because (a) these acts are capable of repetition and (b) these acts involved the offering of, sale, and distribution of services which occurred in the conduct of commerce.

79. As a direct and proximate result of Defendant's actions, Plaintiff suffered monetary harm in the form of increased premiums, insufficient coverage(s), and significant time and expense required to correct and rectify Defendant's errors.

80. As a result, Plaintiff is entitled to an award of damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays this Honorable Court will inquire into the matters set forth herein and award Judgment in favor of Plaintiff, including, but not limited to, awarding Plaintiff all actual and consequential damages to which it is entitled, in addition to punitive damages, treble damages under the SCUPTA, together with all prejudgment interest to which Plaintiff is entitled thereon, and reasonable attorney's fees and costs of this action. Plaintiff further requests all such other and further relief as this Court finds just, equitable, and proper, all in the manner prayed for herein.

Respectfully submitted,

*/s/ Joel A. Berly IV*
Joel A. Berly IV, Esq. (SC Bar. No. 103517)
BERLY ROUSE LLC
311 Johnnie Dodds Blvd., Ste. 171
Mt. Pleasant, SC 29464
T: (843) 969-2887
E: jab@berlyrouse.com

August 12, 2025
Charleston, South Carolina